1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14

GT DEVELOPMENT CORPORATION,

Plaintiff,

v.

TEMCO METAL PRODUCTS COMPANY,

Defendant.

No. C04-0451Z

ORDER ON CLAIM
CONSTRUCTION

15

## I.  INTRODUCTION

16      This matter comes before the Court on claim construction.  The parties requested

17  construction of six claim terms in Plaintiff GT Development Corporation's ("GT") United

18  States Patent No. 4,886,089 ("the '089 patent").  See Pl. Opening Br., docket no. 43; Def.

19  Opening Br., docket no. 41; see also Stipulation re Claim Terms, docket no. 33.

20      After reviewing all of the briefs and declarations filed by the parties in this matter, the

21  Court provided counsel with the Court's "PRELIMINARY DRAFT CONSTRUCTIONS"

22  for each of the disputed claim elements.  See Preliminary Draft Constructions, docket no. 49.

23   During the Markman hearing, the Plaintiff agreed to the Court's construction for the first

24  five claim elements; the Defendant agreed to the Court's construction for all six of the claim

25  elements.  There being only one claim element in dispute, the Court heard testimony and oral

26  argument on the proper construction for that element.  At the conclusion of oral argument,

ORDER – 1

1  the Court ruled on construction for the disputed claim element, and notified the parties that

2  the Court would also issue a written order.

3          Constructions of elements 1-5 were proposed by the Court on April 27, 2004, in the

4  document distributed for discussion prior to the claim construction hearing.[1]  See Preliminary

5  Draft Constructions, docket no. 49.  At the hearing on April 28, 2004, both parties agreed to

6  the Court's construction of five claim elements as follows:

7  **A.     Element One (claims 1, 6, 12, 16).**

8          Claim Language:     "said valve element having a hole extending therethrough for

9                              pivotably mounting the valve element on the mounting post"

10         Construction:       The valve element must be mounted on the post in a manner that

11                             enables rotation (pivoting) of the valve element on the post at the

12                             point the mounting post is received through the valve element.

13 **B.     Element Two (claims 1, 12):**

14         Claim Language:     "said valve element, said hole, and said post being dimensioned

15                             to permit the valve element to pivot freely, without bending, on

16                             the post"

17         Construction:       The valve element must be free to pivot on the post.  The hole in

18                             the valve element must be larger than the post to allow the valve

19                             element to rotate, without application of a bending moment

20                             where the post penetrates the valve element.

21 **C.     Element Three (claims 1, 6, 12, and 16).**

22         Claim Language:     "to cause the valve element to act like a lever and increase the

23                             effective weight of the float to overcome vapor pressure in the

24                             chamber and unseat the valve element when said liquid level

25                             falls"

26  ――――――――――――――

[1] The claim elements are numbered per the Stipulation re Claim Terms, docket no. 33.

ORDER – 2

| | | |
|---|---|---|
| | Construction: | "Lever" is defined as a rigid rod or beam pivoted at a point |
| | | (fulcrum) with a load at one end and a force applied at the other. |
| | | To act like a lever the valve element must be sufficiently rigid to |
| | | sustain a bending moment, to create a mechanical advantage that |
| | | amplifies the weight of the float and unseats the valve element. |

**D.     Element Four (claims 4, 6, 15, and 16).**

| | | |
|---|---|---|
| | Claim Language: | the valve element is "substantially flat" |
| | Construction: | A substantially flat valve element deviates only slightly, if at all, |
| | | from flat.  The valve element must be flat enough to meet the |
| | | functional limitations set forth in parent claims 1, 6, 12, and 16. |

**E.     Element Five (claims 4, 10, 15, 18, and 23):**

| | | |
|---|---|---|
| | Claim Language: | the valve element is made from "semirigid elastomeric material" |
| | Construction: | A valve element made from semirigid elastomeric material may |
| | | flex a small amount, but must be sufficiently rigid to sustain a |
| | | bending moment along its length. Such an element is made from |
| | | a polymer having the elastic properties of rubber or rubber-like |
| | | material. |

## II.  ANALYSIS OF DISPUTED ELEMENT

**A.     Principles of Claim Construction**

The purpose of claim construction is to determine what a person of ordinary skill in the relevant art would have understood the claim language to mean at the time of the invention.  Home Diagnostics, Inc. v. Lifescan, Inc., 381 F.3d 1352, 1355 (Fed. Cir. 2004). The claim construction process establishes the scope of each claim at issue.  Determining the scope of a claim is a question of law for the court.  Markman v. Westview Instruments, Inc., 52 F.3d 967, 999 (Fed. Cir. 1995) (en banc), aff'd, 116 S.Ct. 1384 (1996).

ORDER – 3

1    In construing a claim, the Court should look first to "intrinsic" evidence, which

2    includes the patent claim itself, the specification, and the prosecution history.  Markman, 52

3    F.3d at 979-80; C.R. Bard, Inc. v. United States Surgical Corp., 388 F.3d 858, 861-62 (Fed.

4    Cir. 2004).  The plain language of the patent claim is the starting point for interpretation, and

5    there is a strong presumption in favor of the ordinary meaning of the claim language as

6    understood by one of ordinary skill in the relevant art.  Tate Access Floors, Inc. v. Interface

7    Architectural Res., Inc., 279 F.3d 1357, 1370 (Fed. Cir. 2002).  The Court may also rely on

8    dictionary definitions to determine a claim term's ordinary meaning, so long as the definition

9    is not inconsistent with the patent disclosure.  CCS Fitness, Inc. v. Bruswick Corp., 288 F.3d

10   1359, 1366 (Fed. Cir. 2002).  Moreover, the Court should construe the meaning of a claim

11   term in the context of the entire claim, rather than in isolation.  Hockerson-Halberstadt, Inc.

12   v. Converse Inc., 183 F.3d 1369, 1374 (Fed. Cir. 1999) ("Proper claim construction,

13   however, demands interpretation of the entire claim in context, not a single element in

14   isolation.")

15   The scope of a claim may be limited by statements or representations made in the

16   specification or prosecution history.  See Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d

17   1570, 1576 (Fed. Cir. 1995) ("Arguments and amendments made during the prosecution of a

18   patent application and other aspects of the prosecution history . . . must be examined to

19   determine the meaning of terms in the claims.")  In particular, a claim term may be limited

20   where "the intrinsic evidence shows that the patentee distinguished that term from prior art

21   on the basis of a particular embodiment, expressly disclaimed subject matter, or described a

22   particular embodiment as important to the invention."  Hockerson-Halberstadt, 183 F.3d at

23   1374.  As the Federal Circuit has repeatedly made clear, a patentee is bound by statements

24   made during prosecution in order to obtain allowance of the patent.

25   The inventor's "arguments made during [the prosecution of the patent] regarding

26   meaning of a claim term are relevant to the interpretation of that term in every claim of the

ORDER  –  4

patent absent a clear indication to the contrary." <u>CVI/Beta Ventures, Inc. v. Tura LP</u>, 112

F.3d 1146, 1155 (Fed. Cir. 1997) (citations omitted).  However, the prosecution history can

limit claim terms only where the applicant "clearly and unambiguously disclaimed or

disavowed" a broader interpretation of the claim term.  <u>3M Innovative Properties Co. v.

Avery Dennison Corp.</u>, 350 F.3d 1365, 1371 (Fed. Cir. 2003).  The Court may also rely on

"extrinsic" evidence to construe the claims, but only where the meaning of the terms is not

clear from the intrinsic evidence.  <u>See</u> <u>On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer

GMBH</u>, 386 F.3d 1133, 1139 (Fed. Cir. 2004); <u>Key Pharms., Inc. v. Hercon Labs. Corp.</u>,

161 F.3d 709, 716-17 (Fed. Cir. 1998).  Extrinsic evidence typically may include expert

testimony and articles.  <u>Interactive Gift Express, Inc. v. Compuserve, Inc.</u>, 256 F.3d 1323,

1332 (Fed. Cir. 2001).

**B.    Disputed Element Six (claims 6 and 16):**

Claim Language:    "said valve element, said hole, and said post being dimensioned
to permit the valve element to pivot on the post"

| Plaintiff GT's Proposed Construction | Defendant Temco's Proposed Construction |
|---|---|
| Only "pivot" requires interpretation by the Court because the remaining language is clear and unambiguous. Plaintiff proposes that "pivot" should be interpreted to mean that the valve element is capable of some rotation relative to the float. | The valve element must be free to rotate about the post without any constraint or hindrance caused by interference between the post and valve element. The hole in the valve element must be sufficiently larger than the post and there must be sufficient clearance between the float top, the valve element and the post to allow the valve element to rotate freely and thereby to cause it to act like a lever and unseat the valve. |

The claim language here is nearly identical to the language in element two.  The

parties agreed at oral argument to the Court's proposed construction for element two.  The

focus of this inquiry is the difference, if any, between the claim elements.  In element six, the

post is "dimensioned to permit the valve element to pivot on the post."  <u>E.g.</u> '089 Patent, Ex.

A to docket no. 1, at col. 11, ln. 16-17 (claim 1).  In element two, the post is "dimensioned to

1   permit the valve element to pivot *freely, without bending,* on the post." E.g. '089 Patent, Ex.

2   A to docket no. 1, at col. 11, ln. 63-65 (Claim 6).  The key difference in element six is the

3   absence of "freely, without bending."

4         In briefing and at oral argument, Defendant Temco Metal Products Company

5   ("Temco") proposed the same construction for element six and element two, and agreed to

6   the Court's proposed construction.  Temco argued that the patent claims and specification,

7   and the prosecution history, teach an identical meaning across these claims.  Plaintiff GT

8   objected to this approach, arguing that it is error because there is a difference in meaning

9   between "pivot freely, without bending," and "pivot."  "There is presumed to be a difference

10  in meaning and scope when different words or phrases are used in separate claims." E.g.

11  Nystrom v. Trex Co., 374 F.3d 1105, 1122 (Fed. Cir. 2004).  However, the presumption of

12  different meaning may be rebutted where clear and unambiguous evidence, such as the

13  prosecution history, indicates that different words or phrases are to be given the same

14  meaning.

15        At oral argument, the Court heard expert testimony from both parties.  Professor

16  Wayne Milestone testified for Plaintiff GT, and Professor Evan Waymire testified for

17  Defendant Temco.  Plaintiff's expert testified that "pivot" and "pivot freely, without

18  bending" had different meanings.  Defendant's expert testified that an identical meaning was

19  compelled by the words of the claims, by the disclosure of the patent specification, and by

20  the representations made to the patent office during prosecution.  Neither party interposed an

21  objection to the expert testimony as improper extrinsic evidence.  The Court may rely on

22  extrinsic evidence only where the meaning of the terms is not clear from the intrinsic

23  evidence.  See On-Line Technologies, 386 F.3d at 1139.

24        **1.    The '089 Patent.**

25        Plaintiff argues that element two and element six must have different meanings.

26  Plaintiff's expert testified that "pivot" and "pivot freely, without bending" must be construed

1  differently.  However, the valve element that pivots on the post must function as a lever, in

2  accordance with the teaching of the '089 patent.

3            The hinging, lever-like arrangement of the valve element increases the
          effective weight of the float for the purpose of unseating the valve element.

4

5  '089 Patent, Ex. A to docket no. 1, at col. 5, ln. 1-3.  In order to act like a lever, the valve

6  element rotates (pivots) on the post.  The teaching of the '089 patent is unambiguous as to

7  where the pivoting of the valve element must take place:

8            . . . and said post being dimensioned to permit the valve element to pivot
          on the post *about an axis that extends perpendicularly through the post*,
          to cause the valve element to act like a lever and increase the effective

9          weight of the float . . .

10  See '089 Patent, Ex. A to docket no. 1, at col. 11, ln. 61-66 (emphasis added).  The rotation

11  (pivoting) of the valve element must occur "about an axis that extends perpendicularly

12  through the post."  E.g. '089 Patent, Ex. A to docket no. 1, at col. 11, ln. 17-18 (claim 1), col.

13  11, ln. 63-64 (claim 6); see also Pros. History, docket no. 39, at GT 66, ln. 16-17

14  (unamended claim 1).  The "pivot" functionality of claim 6 is indistinguishable under the

15  teaching of the '089 patent from claims which use the term "pivot freely, without bending."

16        Plaintiff does not propose a construction for "said post being dimensioned," see

17  Plaintiff's Opening Br., docket no. 43, at 8.  The specification and drawings, however, teach

18  that "said post being dimensioned to permit the valve element to pivot . . ." refers to a larger

19  hole and a smaller post, which enables rotation.

20            FIGS. 11 and 12 are enlarged fragmentary views illustrating the rest
          position of the vale element 86 shown in Figs. 3 and 10 and a pivoted

21          position of the valve element 86 (See FIGS. 7-9).  As can be seen in FIG.
          12, *the dimensioning of the hole 88 in the valve element 86 and the relative*

22          *thinness of the valve element 86 relative to the height of the post portion*
          *76 allow the attached end of the valve element 86 to freely pivot on the*

23          *post portion 76 without bending.*

24  See '089 Patent, Ex. A to docket no. 1, at col. 9, ln. 37-42 (emphasis added).  As Defendant

25  contends, the hole in the valve element must be larger than the post to allow the valve

26  element to rotate, which enables the valve element to rotate without bending.  This is

ORDER – 7

1  consistent with claim 6, which teaches that the relative sizes of the post and hole are

2  "dimensioned to permit the valve element to pivot on the post."  Id. at col. 11, ln. 63-64.

3  Pivoting of the valve element is a function of the relative dimensions of the element and post.

4        In addition, the patent requires that rotation take place about the post in order "to

5  cause the valve element to act like a lever."  '089 Patent, Ex. A to docket no. 1, at col. 11, ln.

6  64-65.  The "pivotal mounting of the valve element . . . on the float . . . assists gravity in

7  overcoming vapor pressure to unseat the valve element."  Id. at col. 9, ln. 6-8.  The patent

8  specification teaches that rotation allows the element to act like a lever:

9        As the float 64 descends, the attached end of the valve element 86 pivots
       on the post portion 76 about the axis X.  The pivoting of the valve element
10      86 allows it to act like a lever and increase the effective weight of the float.

11 Id., col. 9, ln. 10-14.  Plaintiff's argument that binding or bending would not affect lever

12 action is unpersuasive.  The element must pivot freely, without bending, in order to act like a

13 lever.  Rotation (pivoting) of the valve element is required for the valve element to "act like a

14 lever . . . and unseat the valve element."  See '089 Patent, Ex. A to docket no. 1, at col. 11,

15 ln. 65-68.  By the teaching of the '089 patent, where the valve element is unable to rotate

16 freely, without bending, the valve element is unable to "act like a lever."  Inducing a bending

17 moment at the post would counteract the lever functionality.  If the valve element bends at

18 the post, it cannot act as a lever.  The valve element must be able to rotate freely on the post,

19 without bending, in order to act like a lever as required by the patent claims.

20        **2.    Prosecution History.**

21        The prosecution history similarly discloses that the invention of the '089 Patent

22 requires free rotation about the post without bending.

23        [I]t should be clear that the Judsen valve element 33, 40 is clamped onto
       the support rod 30 (mounting post) rather than being pivotably mounted as
24      specified in amended claim 1.  * * *  Thus, the parts of the Judsen valve
       are not dimensioned as specified in amended claim 1 to permit the valve
25      element 33, 40 to pivot without bending on the rod 30 about an axis that
       extends perpendicularly through the rod 30.

26

ORDER – 8

Pros. History, docket no. 39, at GT 102 (emphasis in original).  The applicants represented to

the Examiner that pivotably mounting the element on the post allows rotation, contrary to the

"clamping" method of the prior Judsen patent, U.S. Patent No. 3,306,314.

> Moreover, the clamping of the support 24 onto the rod 30 prevents the
> valve element 33, 40 from pivoting freely on the rod 30 about any axis.

Pros. History, docket no. 39, at GT 102-03.  The applicant's representations to the examiner

are directly relevant to the proper construction of "pivot."

The Court recognizes the strong presumption that the claim terms "pivot" and "pivot

freely, without bending" have different meanings.  Nystrom, 374 F.3d at 1122.  However, in

order to overcome rejection of unamended claim 1, the applicants argued to the Examiner

that these terms have identical meanings.  Unamended claim 1 used language identical to

final claim 6, teaching a valve element that pivots on the post:

> said valve element, said hole, and said post being dimensioned to permit
> the valve element to *pivot on the post* about an axis that extends
> perpendicularly through the post

Pros. History, docket no. 39, at GT 66, ln. 16-17 (emphasis added) (unamended claim 1); see

also '089 Patent, Ex. A to docket no. 1, at col. 11, ln. 63-64 (claim 6).  This language was

rejected by the Examiner "under 35 U.S.C. 102(b) as being clearly anticipated by Judsen."

Id. at GT 85.  In the applicants' subsequent "clarifying amendment" to claim 1, id. at GT

100, they specified that the "valve element pivots 'freely, without bending'" in order to

overcome Judsen.  Id.  The applicants' own unequivocal and express representations to the

Examiner rebut the presumption of different meaning:

> The clarifying amendment to claim 1 specifies that the valve element
> pivots "freely, without bending" to clarify the meaning of the term "pivot"
> in unamended claim 1.

Pros. History, docket no. 39, at GT 100.  This representation to the Examiner is clear and

unambiguous, and is critical to this inquiry.  Plaintiff's counsel conceded at oral argument

that these representations would have been fatal to its position had the representation been

made prior to the rejection of claim 1, and objection to claim 2, by the Examiner.  See Pros.

ORDER – 9

1   History, docket no. 39, at GT 84-87.  Plaintiff's counsel argues, however, for a different

2   result because the representation was made later, in conjunction with the combination of

3   unamended claim one and two, to form final claim six.[2]  Plaintiff's argument, however, is

4   without merit.

5       The applicants' statements to the examiner clearly and unambiguously disclaimed

6   functionality by clarifying the meaning of the term "pivot," and Plaintiff's attempt to

7   distinguish the timeline for the concession is unavailing.  The applicants' representations

8   compel the conclusion urged by the Defendant, and the Court finds these claim terms have

9   identical meanings.  The applicants represented to the Examiner that "pivot" should be

10  clarified to mean "pivot freely, without bending" to overcome rejection because of Judsen,

11  and are bound by that representation here.

12      The Court concludes that the term "pivot" as used in claim 6 and 16 means "pivot

13  freely, without bending."  Plaintiff's concession at oral argument, and its attempts to

14  distinguish the timing of the representation, ignore the underlying rejection over Judsen and

15  the plain language of the '089 patent.

16      **3.     Construction.**

17      The '089 patent specification, claims, and prosecution history clearly set forth the

18  meaning of this disputed claim term, as follows:

19      Construction:         The term "pivot" as used in claim 6 and 16 means "pivot freely,

20                            without bending."  The hole in the valve element must be larger

21                            than the post to allow the valve element to rotate, without

22                            application of a bending moment where the post penetrates the

23                            valve element.

24  //

25  _____

26      [2] Another change was made to unamended claim 1 as it became final claim 6, but that change is not material here and counsel conceded as much at oral argument, admitting that all of the disputed language from unamended claim 1 made its way into final claim 6.

### III.   CONCLUSION

For the reasons set forth in this Order, the Court adopts the five constructions agreed to by the parties at oral argument as set forth in this Order.  The Court construes disputed element six as set forth in this Order.

IT IS SO ORDERED.

DATED this 2nd day of May, 2005.

Thomas S. Zilly
United States District Judge

ORDER  –  11