UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GT DEVELOPMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>TEMCO METAL PRODUCTS COMPANY,<br><br>Defendant. | No. C04-0451Z<br><br>ORDER |

## I.     Background

U.S. Patent No. 4,886,089 ("the '089 patent") relates to venting valves for liquid tanks, such as fuel tanks. See Complaint, docket no. 1, Ex. A ('089 Patent). Plaintiff GT Development Corporation ("GT") has moved to dismiss their claims for patent infringement with prejudice pursuant to Fed. R. Civ. P. 41(a)(2), following the April 28, 2005, hearing on claim construction. See Minute Entry, docket no. 50.

The parties requested construction of six claim terms. See Stipulation re Claim Terms, docket no. 33. Prior to the hearing, the Court presented the parties with Preliminary Draft Constructions for each of the disputed claim elements. See Preliminary Draft Constructions, docket no. 49. At the hearing, the parties agreed to the Court's proposed constructions for five of the elements. On the remaining element, Plaintiff GT disputed the Court's proposed construction, and Defendant Temco Metal Products Company agreed with

ORDER – 1

the Court's proposed construction. On May 2, 2005, the Court issued its Order on Claim Construction, docket no. 51.

As a result of the Court's Order on Claim Construction, Plaintiff GT has determined not to pursue this action further. See Plaintiff's Motion to Dismiss, docket no. 55, at 2-3. Plaintiff seeks (1) voluntary dismissal of GT's patent infringement action, with prejudice; (2) dismissal of Temco's declaratory judgment counterclaims for lack of jurisdiction; and (3) dismissal of Temco's claims for attorneys' fees under 35 U.S.C. § 285.

## II. Discussion

### A. Motion to Dismiss under Fed. R. Civ. P. 41(a)(2).

Plaintiff moves the Court to dismiss pursuant to Fed. R. Civ. P. 41(a)(2), and provides an unconditional Super Sack covenant. E.g., Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1058 (Fed. Cir. 1995). A Super Sack covenant not to sue strips the Court of jurisdiction because there is no longer an actual controversy as required by Article III. Id. at 1057-58. Plaintiff GT has expressly promised that:

> GT will unconditionally agree not to sue Temco for infringement as to any claim of the patent-in-suit based upon any product previously or currently manufactured and sold by Temco.

See Plaintiff's Motion to Dismiss, docket no. 55, at 5. Plaintiff's Motion to Dismiss under Fed. R. Civ. P. 41(a)(2) is also properly considered under Fed. R. Civ. P. 12(b)(1), by virtue of the Super Sack covenant. Plaintiff's Motion to Dismiss under Fed. R. Civ. P. 41(a)(2) is GRANTED. Plaintiff's claims for patent infringement are DISMISSED WITH PREJUDICE.

### B. Dismissal of Temco's Counterclaims.

Plaintiff GT has provided Defendant Temco with a Super Sack covenant, unconditionally agreeing not to sue Temco for infringement of the patents-in-suit. Defendant Temco's counterclaims for invalidity and noninfringement are therefore DISMISSED without prejudice for lack of jurisdiction. See Super Sack, 57 F.3d at 1058-59. Temco does not object to this dismissal.

ORDER – 2

Temco's counterclaim for attorneys' fees under 35 U.S.C. § 285 is considered as part of this Order.[1]

**C.     Prevailing Party**

Although the Court imposes no terms or conditions on dismissal, the Court finds Defendant Temco is the prevailing party in this litigation.  See Power Mosfet Tech., LLC v. Siemens AG, 378 F.3d 1396, 1415-16 (Fed. Cir. 2004) ("[T]he dismissal of a claim with prejudice . . . is a judgment on the merits under the law of the Federal Circuit.").  Whether Temco is a "prevailing party" is a matter of Federal Circuit law.  Id.  Defendant was successful on claim construction.  The Court has granted Plaintiff's motion to dismiss its claims against Defendant with prejudice.  Defendant Temco, "which had all claims against it dismissed with prejudice, is therefore [the] prevailing party." Id. at 1416.

**D.     Basis for Attorneys' Fee Award under 35 U.S.C. § 285.**

Defendant urges the Court to allow for additional discovery and briefing on the question of its entitlement to attorneys' fees under 35 U.S.C. § 285.  Plaintiff argues that "GT's motion for dismissal properly puts the attorneys' fees issue before the Court and requires Temco to present its attorneys' fees case." See Reply, docket no. 65, at 3.  The Court agrees with Plaintiff that these issues are fully briefed and ripe for consideration.

---

[1] Plaintiff argues that if the Court imposes an attorneys' fee award under 35 U.S.C. § 285 based on an "exceptional" finding, GT will decline dismissal and proceed with the litigation. See Plaintiff's Motion to Dismiss, docket no. 55, at 6 n. 17 (citing Beard v. Sheet Metal Workers Union, Local 150, 908 F.2d 474, 476 (9th Cir. 1990)).  However, the Ninth Circuit Beard case deals not with an award of attorneys' fees in an exceptional case under § 285, but with an award of Fed. R. Civ. P. 41(a)(2) "terms and conditions" on voluntary dismissal.  This Court imposes no "terms and conditions" on the Rule 41(a)(2) dismissal.

The Court's consideration here of attorneys' fees is pursuant to 35 U.S.C. § 285, and not Fed. R. Civ. P. 41(a)(2).  Plaintiff has cited no authority that a party may provide a Super Sack covenant and motion for Rule 41(a)(2) dismissal, but decline the dismissal after an "exceptional" finding under § 285.  Federal Circuit precedent indicates that a Rule 41 dismissal, and an inquiry into the "exceptional" nature of the case, are properly undertaken as separate inquiries. See generally Cambridge Products, Ltd. v. Penn Nutrients, Inc., 962 F.2d 1048, 1049-51 (Fed. Cir. 1992) (separate consideration of Rule 41(a)(2) and § 285 attorneys' fees). The Court determines that Plaintiff may not condition its Rule 41 dismissal on the Court's second and subsequent factual inquiry under 35 U.S.C. § 285.

ORDER – 3

An award of attorneys' fees in patent cases is premised on statutory authority:

> **§ 285. Attorney Fees.**
>
> The court in exceptional cases may award reasonable attorney fees to the prevailing party.

35 U.S.C. § 285. In patent infringement cases, a determination whether to award attorneys fees to the prevailing party involves a two-step process. Forest Laboratories, Inc. v. Abbott Laboratories, 339 F.3d 1324, 1327 (Fed. Cir. 2003). First, the Court must determine whether the prevailing party has proved by clear and convincing evidence that the case is "exceptional." Id. This is a factual determination made by the district court. Second, if the Court finds the case to be exceptional, it must then determine whether an award of attorneys fees is appropriate. Id. at 1328. The Federal Circuit has identified as "exceptional" those cases involving (1) inequitable conduct before the Patent Office, (2) litigation misconduct, (3) vexatious, unjustified, and otherwise bad faith litigation, or (4) a frivolous suit or willful infringement. Id. at 1329. "A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known was baseless." Stephens v. Tech Int'l, Inc., 393 F.3d 1269, 1273-74 (Fed. Cir. 2004) ("[T]he pertinent inquiry is whether [plaintiff] knew or should have known that it could not successfully assert the [patent-in-suit] against [defendant] but pursued its infringement claim anyway.").

The Court is cognizant of the limited circumstances in which an award of § 285 attorneys' fees is appropriate. See Mach. Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 472 (Fed. Cir. 1985) ("It is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits") (internal citation omitted). The plain language of the statute states that attorneys fees may only be awarded in exceptional cases. 35 U.S.C. § 285. Plaintiff argues that not a single exceptional circumstance is "even colorably" present here. The Federal Circuit has observed that an award of attorney fees under § 285 is limited to circumstances in which it is necessary to prevent "a gross injustice" to the accused infringer. See Mach Corp., 774 F.2d at 472. This Court agrees with Plaintiff that the American Rule

ORDER – 4

1  does not ordinarily permit an attorneys' fee award.  Section 285 and Federal Circuit
2  precedent contemplate an award of fees only where litigation conduct or related activities are
3  exceptional.  Defendant Temco asserts various grounds for finding this case "exceptional"
4  under 35 U.S.C. § 285.

   **1.  Infringement basis.**

6  "The filing and maintaining of an infringement suit which the patentee knows, or on
7  reasonable investigation should know, is baseless constitutes grounds for declaring a case
8  exceptional under 35 U.S.C. § 285 and awarding costs, attorney fees, and expenses to the
9  accused infringer."  Eltech Systems Corp. v. PPG Industries, Inc., 710 F. Supp. 622, 636
10 (W.D. La. 1988); see also Forest Laboratories, 339 F.3d at 1329 ("[E]xceptional" cases are
11 those involving inequitable conduct before the Patent Office; litigation misconduct;
12 vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful
13 infringement.).  A frivolous infringement suit is one which the patentee knew, or on
14 reasonable investigation should have known, was baseless.  Stephens, 393 F.3d at 1273-74.
15 Defendant Temco asserts that no person of reasonable skill in the art could conclude that
16 Temco's full-function vent infringes any claim in the '089 Patent.  Defendant Temco asserts
17 that Plaintiff's claims of infringement were baseless.

18 During claim construction the Court did not look at the accused device, or compare
19 the accused device to the asserted claims of the '089 Patent.  However, as part of Plaintiff's
20 Motion to Dismiss, the Court has reviewed photographs of the accused device in various
21 stages of function, as relied upon by Plaintiff and its expert in their Reports, and during the
22 pendency of this litigation.  See, e.g., Milestone Decl., docket no. 63, Ex. A, at 12-13.  The
23 photographs of the accused device submitted by the Plaintiff in Reply support the
24 Defendant's arguments that the infringement claims were baseless.  For example, claim 1 of
25 the '089 Patent includes a limitation with regard to the valve element, the hole, and the post:

26 > . . . said valve element, said hole, and said post being dimensioned to
> permit the valve element to pivot freely, without bending, on the post about

ORDER – 5

> an axis that extends perpendicularly through the post, to cause the valve element to act like a lever and increase the effective weight of the float to overcome vapor pressure in the chamber and unseat the valve element when said liquid level falls.

See '089 Patent, Ex. A to docket no. 1, at 11:15-22.  However, in spite of the requirement that the post be dimensioned to allow the valve element to "pivot freely, without bending, on the post," photos of the accused device clearly and unmistakably indicate that the valve element does not "pivot freely, without bending, on the post."  See Milestone Decl., docket no. 63, Ex. A, at 13 (valve element photo).  The photo is accompanied by a description which misdescribes the valve element configuration depicted:

> . . . it is evident that the dimensions of the Temco 90-03550 valve element, the hole, and the post permit the valve element to pivot freely, without bending, on the post about an axis that extends perpendicularly through the post.

Id. at 13, col. 2.  The picture shows a valve element with flexible characteristics in a substantial state of "bending."  Moreover, the bending of the valve element unmistakably does not occur about an axis that extends perpendicularly through the post.  GT's Principal Engineer, Alan Forsyth, admitted this in his deposition:

> Q:   . . . is it your contention that the Temco valve element pivots about the post?
>
> A:   It pivots around the corner—the corner, which is equivalent.

Stride Decl., docket no. 61, Ex. 14 (Forsyth Dep. p. 31, ln. 11-16).  In addition, Mr. Forsyth and Mr. Bozich, GT's President, conceded at their depositions that nobody at GT conducted any tests to observe how the valve element unseated from the valve opening prior to the filing of this lawsuit.  See id., Ex. 14 (Forsyth Dep., p. 83, ln. 1-8), Ex. 11 (Bozich Dep., p. 74, ln. 7-12; p. 83, ln. 25 - p. 84, ln. 17).  Mr. Forsyth admits that he had the allegedly infringing "Temco vent" one month before this litigation was filed.  See Fricke Decl., docket no. 64, Ex. H (Forsyth Dep., p. 13, ln. 1-18).

ORDER – 6

Defendant also points to claim language in some asserted claims which requires a "substantially flat" valve element. See '089 Patent, Ex. A to docket no. 1, at 11:29-31. Professor Milestone's analysis of the Temco valve element – a three dimensional "L" shaped valve element – concludes that it literally infringes the claimed "substantially flat" valve element.[2] Professor Milestone finds infringement because the valve element is comprised of multiple "substantially flat" faces. However, this conclusion would be true for any three-dimensional flat faced object (e.g. pyramid, cube, etc.) comprised of multiple substantially flat faces, even though the object could not reasonably be described as "substantially flat."

Defendant Temco rightly challenges the underlying factual basis for the claimed infringement. The Court finds that Plaintiff's allegations of infringement were not well-grounded in fact, and that a reasonable investigation should have revealed that Defendant's device did not fit within the limits of the '089 Patent claims.

**2.    Pre-filing investigation**

Defendant Temco challenges the adequacy of Plaintiff's pre-filing investigation. In spite of the fact that Defendant Temco counterclaimed for attorneys' fees, and repeatedly sought discovery of Plaintiff's pre-filing investigative opinions, GT refused these discovery requests at every turn. Temco argues that the Court should strike Plaintiff's declarations and materials because they were not produced in discovery, and because Plaintiff repeatedly indicated it would not rely on those materials.

During the pendency of this litigation Plaintiff GT refused to produce its pre-filing investigative materials; it now seeks to rely on those still unproduced materials in its Motion to Dismiss. GT refused Temco's requests for these documents on privilege grounds, see Stride Decl., docket no. 61, Ex. 5, and instructed its witnesses not to answer questions regarding the substance of the pre-filing investigation of Temco's products, and infringement

---

[2] Professor Milestone was not engaged as an expert witness until after Plaintiff GT filed this lawsuit. See Denkenberger Decl., docket no. 57, ¶ 8.

ORDER  –  7

1   of the '089 Patent.  See id., Ex. 11 (Bozich Dep., p. 36, ln. 25 - p. 37, ln. 10; p. 37, ln. 11-18;
2   p. 39 ln. 2-11; p. 79 ln. 25 - p. 82, ln. 8).  Only when GT agreed not to introduce evidence of
3   its pre-filing investigation and opinions to rebut Temco's claims for attorneys' fees under 35
4   U.S.C. § 285 did Temco agree not to compel production of those documents and answers to
5   deposition questions.  See Stride Decl., docket no. 61, ¶ 19.  Temco argues that GT uses the
6   privilege as both a sword and shield, claiming attorney-client privilege when expedient, but
7   disclosing partial information in a conclusory fashion for the purposes of these motions.

8         Plaintiff alleges that the Court's inquiry under 35 U.S.C. § 285 is different from the
9   introduction of evidence at trial, and that GT should not be barred from relying on its pre-
10  filing investigation to establish that this case was not "exceptional."  However, even if the
11  Court denied Temco's request to strike GT's pre-filing investigation declarations, the
12  declarations do not reveal the technical or legal basis for the pre-filing investigation.  As in
13  Eltech Systems, "[this] Court has no basis for assessing the reasonableness of the advice
14  [given by counsel] nor the reasonableness of plaintiff's reliance upon it."  710 F. Supp. at
15  637-38.  The Court and the Defendant have been deprived of the opportunity to assess the
16  reasonableness of the pre-filing investigation and determine whether the opinion was well
17  founded either in fact or in law.  See id. at 638.  Plaintiff was given every opportunity to
18  waive the privilege with regard to its pre-filing investigation, and was aware of Temco's
19  counterclaim for fees under an "exceptional" case theory.  GT continues to assert the
20  privilege, and therefore cannot rely on the facts of its investigation to establish this case is
21  not "exceptional."

22        Even if the Court were able to consider GT's pre-filing investigative materials (which
23  have not been produced to the Court or to Temco), these materials would not be helpful to
24  Plaintiff.  The Court has considered Plaintiff's expert report, Milestone Decl., docket no. 63,
25  Ex. A, and finds the claim analysis conclusory, and evidencing a disregard for the obvious
26  facts surrounding the alleged infringement of the accused device, and the claimed invention
    of the '089 patent.  It is evident to this Court and to GT's Principal Engineer, Alan Forsyth,

ORDER – 8

that the Temco valve element pivots around the <u>corner</u> of the post. Stride Decl., docket no. 61, Ex. 14 (Forsyth Dep. p. 31, ln. 11-16). It should have been obvious to Plaintiff GT that these claims for infringement were without merit.

Lastly, the testimony of GT's President, Mr. Bozich, indicates that he relied only on the oral advice of counsel that there was an infringement of the '089 Patent. <u>See</u> Stride Decl., docket no. 61, Ex. 11 (Bozich Dep., p. 37, ln. 16). Mr. Bozich did not consider the chances of prevailing when filing this lawsuit. <u>Id.</u> (Bozich Dep., p. 38, ln. 13-15). Mr. Bozich did not have an understanding of the chances of prevailing when he made the decision to bring the lawsuit. <u>Id.</u> (Bozich Dep., p. 38, ln. 16-18). Mr. Bozich did not have any understanding of how the Temco full-function vent infringed the '089 Patent. <u>Id.</u> (Bozich Dep., p. 38, ln. 20-22). Mr. Bozich did not have an understanding of the invention of the '089 Patent. <u>Id.</u> (Bozich Dep., p. 38, ln. 23 - p. 39, ln. 1). Lastly, Mr. Bozich never received, saw, or reviewed a written opinion from patent counsel regarding infringement of the '089 Patent from counsel, prior to filing the Complaint for infringement. <u>Id.</u> (Bozich Dep., p. 39, ln. 16-25). Plaintiff's vague reliance on non-disclosed oral advice from counsel is similar to the circumstances described in <u>Eltech Systems</u>:

> The Court has considered the fact that [plaintiff] defends its conduct on the ground it was acting on oral advice of counsel when it authorized the filing of the amended complaint. This defense must fail because [plaintiff] has not revealed the content of the oral advice, nor the technical or legal basis for it. It has withheld the only written technical report pertaining to the pre-filing investigation * * * [After defendant] made its prima facie case, plaintiffs put in nothing to rebut that case except to establish that [plaintiff] relied on vaguely described oral conversations with counsel. Under these circumstances, it was incumbent upon plaintiffs to reveal the technical and legal basis for orally given legal advice, to state what investigation had been made by [plaintiff's] attorneys, and to establish what technical information counsel had when it gave its advice. Without this evidence, the Court has no basis for assessing the reasonableness of the advice nor the reasonableness of plaintiff's reliance upon it.

710 F. Supp. at 637-38. Plaintiff GT made the tactical decision to withhold its pre-filing investigation because it believed Temco had not "produced one shred of evidence that it could bear its clear and convincing burden of proving 'exceptional case,' even if it were to

ORDER – 9

prevail at trial." See Reply, docket no. 65, at 7. Even now, GT asserts the attorney-client privilege. The Court therefore STRIKES paragraphs 4, 5, 6, and 7, of the Denkenberger Declaration, docket no. 57. Even if the Court were to consider the Denkenberger Declaration, the Court finds it fails to include a technical or legal basis for the opinion, and presents conclusory allegations of proper investigation, which are insufficient to establish Plaintiff's adequate pre-filing investigation activities.

**3.    Representations to Temco Customers.**

Temco characterizes this lawsuit as a "strike" lawsuit, brought by a larger corporation against a smaller competitor for the sole purpose of securing the full-function fuel valve market for itself. As part of this litigation, Plaintiff GT sent numerous letters to customers of Defendant Temco, and caused harm to Temco's business relations with its customers. For example, on March 9, 2004, GT sent a letter to Mr. Evan Traub of Jacobsen and Mosher Inc., threatening litigation for its sale of Temco's gas venting valves. See Stride Decl., docket no. 61, Ex. 19, at 1.

Also on March 9, 2004, GT sent a letter to Mr. Carlos Andrade of Freightliner Corporation, informing Freightliner (a customer of Temco) of its infringement allegations against Temco's products. Id. at Ex. 19, at 2. Similar letters informing Temco customers of the litigation and infringement allegations were sent to Ms. Sarah Moriss, Freightliner Corporation, id. at Ex. 19, at 3; Mr. Alan Beddall, Kenworth Truck Company, id. at Ex. 19, at 4; Ms. Sandra Korb, PACCAR, id. at Ex. 19, at 5; Mr. Thomas Leffler, PACCAR PARTS, id. at Ex. 19, at 6; Mr. Steve Gutterman, Purchasing Manager for Volvo Trucks NA, id. at Ex. 19, at 7; Ms. Jo Traub, Director North American Purchasing, Volvo Trucks, id. at Ex. 19, at 8; Mr. Hans Roman, Supplier Development Mgr., International Truck, id. at Ex. 19, at 9; Mr. Jeff Glowacki, Director of Supply Chain Mgmt., id. at Ex. 19, at 10; Mr. Tim Masek, President, Fuel Systems LLC, id. at Ex. 19, at 11; Mr. Larry Yonker, Director of Supply Mgmt, Fuel Systems LLC, id. at Ex. 19, at 12; Mr. David Morris, Supply Chain Manager,

ORDER – 10

1   Fuel Systems LLC, id. at Ex. 19, at 13; Mr. Arthur Hill, Supply Chain Manager, Fuel

2   Systems LLC, id. at Ex. 19, at 14; Ms. Carol Shaver, Supply Chain Manager, Fuel Systems

3   LLC, id. at Ex. 19, at 15.

4         A patent holder with a "good faith belief that its patents are being infringed violates

5   no protected right when it so notifies infringers," or others in the marketplace. See

6   Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700, 709 (Fed. Cir. 1992). What constitutes

7   bad faith is determined on a case by case basis. Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d

8   1340, 1354 (Fed. Cir. 1999). "Obviously, if the patentee knows that the patent is invalid,

9   unenforceable, or not infringed, yet represents to the marketplace that a competitor is

10  infringing the patent, a clear case of bad faith representations is made out." Id.

11        The transmittal of these letters, based on claims of infringement that were without

12  merit, was not undertaken in good faith. Allegations were made against a smaller[3]

13  competitor, and "greatly interfered with Temco's customer relationships, and cost Temco

14  business from customers and prospective customers." See Bosch Decl., docket no. 60, ¶ 4;

15  see also Stride Decl., docket no. 61, Ex. 19, at 16.

16  ///

17  ///

18  **D.    Exceptional Finding.**

19        An "exceptional" case must involve conduct or circumstances that are unusual or

20  atypical. Garden variety discovery disputes, arguments over the reasonableness of claim

21  ───────────────────────

22  [3] Temco emphasizes the relative sizes of the parties in making its case for bad faith communications with its customers. See Glaverbel Societe Anonyme v. Northlake Marketing
23  & Supply, Inc., 45 F.3d 1550, 1558 (Fed. Cir. 1995) ("A purpose is improper if its goal is not to win a favorable judgment, but to harass a competitor and deter others from competition, by
24  engaging the litigation process itself, regardless of the outcome."). Plaintiff GT received confidential financial information from Defendant Temco in October of 1998 as part of a
25  possible acquisition or joint venture. Id. at ¶ 5; see also Fricke Decl., docket no. 64, Ex. I (Bozich Dep., p. 42 ln. 14), and was aware that Defendant Temco was a significantly smaller
26  corporation. Plaintiff's litigation tactics caused Temco substantial harm, with litigation costs allegedly exceeding $350,000, nearly equal to Temco's total accumulated operating profit for the last five years. See Bosch Decl., docket no. 60, ¶ 6.

ORDER – 11

construction, and the general burdens of patent litigation are not grounds for an exceptional finding. It follows that every prevailing party in a patent case is not automatically entitled to an exceptional finding, nor should every patent case end with an "obligatory" motion for an exceptional finding. Willful infringement, frivolous infringement lawsuits, inequitable conduct, litigation misconduct, and vexatious, unjustified, or otherwise bad faith litigation activities, are grounds for an exceptional finding. Conduct or litigation tactics that are unduly oppressive and burdensome, and of questionable merit, may justify an "exceptional" finding, and an award of attorneys' fees, if gross injustice would result. Forest Laboratories, 339 F.3d at 1329.

The Court finds this case exceptional by clear and convincing evidence, pursuant to 35 U.S.C. § 285. Plaintiff's claims of infringement were baseless, and Plaintiff had no understanding of the infringement at the time it decided to bring this lawsuit, except for vaguely referenced oral advice of counsel. Plaintiff's claim construction position was untenable, and its litigation activities unreasonably and unnecessarily affected the relations of Defendant Temco and its customers, in a negative way. The costs of the litigation itself had the effect of wiping out Plaintiff's total accumulated operating profits for the last five years.

The Court finds by clear and convincing evidence that Defendant Temco is entitled to the full measure of its reasonable attorneys' fees, expenses, and costs expended in this litigation. That award is justified by the manner in which this suit was brought and maintained, the baseless nature of the infringement claims, and Plaintiff's litigation activities during the course of this lawsuit. Defendant Temco shall submit a supplemental motion and declaration documenting its attorneys' fees and costs (redacted as appropriate) as basis for its attorneys' fees, costs, and expenses within 20 days of this Order. The motion shall be noted for the third Friday pursuant to Local Rule 7(d)(3).

## III. Conclusion

ORDER – 12

1. Plaintiff's Motion to Dismiss under 41(a)(2) is GRANTED in part, and DENIED in part. Plaintiff's claims for patent infringement are DISMISSED WITH PREJUDICE. Defendant Temco's counterclaims for invalidity and noninfringement are DISMISSED without prejudice. The Court imposes no conditions on dismissal.
2. Dismissal on the merits after prevailing on claim construction makes Defendant Temco the prevailing party in this litigation.
3. This case is exceptional under 35 U.S.C. § 285 for the reasons stated in this Order. Defendant Temco is entitled to the full measure of its attorneys' fees, expenses, and costs, as set forth in this Order.

IT IS SO ORDERED.

DATED this 1st day of July, 2005.

Thomas S. Zilly
United States District Judge